## THE MARY B. WELLINGTON.

## THE ANNIE J. PARDEE.

*(District Court, D. Massachusetts. January 29, 1885.)*

COLLISION—SCHOONERS—FAULT—CONFLICTING EVIDENCE.

> The collision in this case *held* due to the negligence of the schooner Wellington, and that the schooner Pardee was entitled to an interlocutory decree for damages.
> S. C. reversed on appeal, *post,* 155.

In Admiralty.

*John Lathrop,* for the Annie J. Pardee.

*Frederic Dodge,* for the Mary B. Wellington.

NELSON, J. These are cross-libels for a collision between two large three-masted schooners, the Mary B. Wellington and the Annie J. Pardee, on the evening of October 8, 1884. The place of the collision was off Peaked Hill bars on Cape Cod. The night was dark and

cloudy, the atmosphere clear, and the wind S. W. by S., blowing a fresh breeze. The Wellington, light bound from Boston to New York for a cargo of salt, was sailing close-hauled on the wind on the starboard tack, with her lower sails and mizzen-top sail set. Her rate of speed was six knots. The Pardee was on a voyage from Baltimore to Boston, coal laden; she was on the port tack, under all her sails, with the wind abaft her beam. Her speed was eight knots. The two vessels were sailing on nearly opposite courses, the Wellington's S. E. three-quarters S., and the Pardee's N. W. by N. A few minutes before the collision, a steamer, bound out, passed the Wellington on her starboard or windward side, and then kept off to leeward across her bow, between her and the Pardee. The Alice Montgomery, a three-masted schooner, was coming up about half a mile astern of the Pardee, a little to the windward of her, and on very nearly the same course.

The libel of the Wellington alleged that while proceeding on her course the green light of a vessel, which proved to be the Pardee, was seen about a point on the Wellington's weather or starboard bow, and not far from a half a mile distant; that had the Pardee kept on as she was then heading, she would have passed clear of the Wellington, to windward of her; that, having the wind free, she was bound by law to avoid and keep clear of the Wellington, and easily might have done so, but instead of so doing, and when so near as to make it impossible for her to cross the Wellington's bow, she suddenly altered her course, showed both lights, and headed directly towards the Wellington's starboard side; that a collision then appearing to be inevitable, the Wellington's helm was put hard up for the purpose of avoiding the force of the blow, but that the Pardee continued to run directly towards the Wellington, and almost immediately struck her on the starboard side just forward of the mizzen rigging.

The libel of the Pardee alleged that the lookout on the Pardee reported a red light on the port bow; that her master had previously seen the light, and noticed that it bore a point and a half to two points on the port bow, and appeared to be about two miles off; that, on the light's being reported by the lookout, the master ordered the man at the wheel to keep the vessel off a little, and the wheel was put to port, and the Pardee kept off about a point, thus giving the other vessel plenty of room to pass red light to red light; that the other vessel, instead of keeping her course as she was bound in law to do, presently showed both lights, thus indicating to those on the Pardee that the other vessel had starboarded her helm and had also kept off, and immediately showed only her green light; that the master of the Pardee, seeing that a collision was then inevitable, and to prevent being run down and sunk by the approaching vessel, which proved to be the Wellington, ordered the helm of the Pardee put hard down, and the vessels came together, the Pardee striking the Wellington between the main and mizzen rigging.

The case is not free from difficulty. The evidence is conflicting and very evenly divided. It consists of the testimony of the men on the two vessels, and of men on other vessels in the vicinity at the time. These all appear to be intelligent and honest witnesses. It is apparent from the relative situations of the two vessels and the surrounding circumstances that the accident could not have happened unless one of them at least was at fault. The lights of the steamer and of the Alice Montgomery are confusing elements in the problem. The libel of the Wellington omits to state the important fact, testified to by her master, that when the Pardee's light was first reported, and before the collision had become imminent, the Wellington's helm was put to starboard, and she fell off a point. I do not deem it necessary to recapitulate the evidence. My conclusion, after careful consideration, is that the preponderance of the evidence goes to prove that the course of the Wellington was to the windward of the course of the Pardee. That being established, the collision is undoubtedly to be attributed to the Wellington's having kept off in the first instance. Had she kept her course, or luffed, as I think she might have done, although close-hauled, she would have gone clear. It sufficiently appears that she was not so near the wind as to prevent her luffing without losing control of herself. In this view of the case, the Pardee seems to have acted properly in porting. The lookout of the Wellington was not called. He disappeared from the vessel the next day at Boston, and has not been since found. The whole case turns upon whether the green or the red light of the Pardee was first seen from the Wellington. He is the only person who can answer the question with certainty. In a case so evenly balanced as this, the absence of a living witness so important as this man is a misfortune that I think should be borne by the party responsible for his conduct.

In the case of the Pardee against the Wellington an interlocutory decree is ordered for the libelants. The Wellington's libel against the Pardee is dismissed. Neither party to recover costs. Ordered accordingly.